## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RICHARD JOSEPH BROCKMAN, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:15-CV-00745-WSD-AJB** |
| **v.** | : | |
| | : | |
| **OCWEN LOAN SERVICING, LLC; BCHH, INC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## NON-FINAL REPORT AND RECOMMENDATION

Currently before the Court are the motions to dismiss Plaintiff's complaint filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and BCHH, Inc. ("BCHH"), respectively. [Docs. 18, 20]. For the reasons set forth below, the undersigned **RECOMMENDS** that the motions be **GRANTED**.

## I.     Background

### A.     Procedural History

Plaintiff Richard Joseph Brockman, Jr. originally filed this action *pro se* on July 3, 2013, asserting state law claims against First Ohio Banc & Lending, Inc.,

Defendant Ocwen and Defendant BCHH.  *See Brockman v. Ocwen*, No. 1:13-cv-02230-WSD (hereinafter "*Brockman I*").  On October 9, 2013, the District Court dismissed the action without prejudice, concluding that the Court lacked subject matter jurisdiction over Plaintiff's claims.  *See Brockman I*, Doc. 21.  Plaintiff filed a motion for reconsideration and a motion to amend the complaint to assert a federal claim under the Fair Credit Reporting Act ("FCRA") against Defendant Ocwen.  *Brockman I*, Docs. 26, 27.  On September 17, 2014, the District Court denied Plaintiff's motion for reconsideration, again finding a lack of subject matter jurisdiction.  The Court also denied Plaintiff's motion to amend to add the FCRA claim on the grounds that Plaintiff's motion was both untimely and futile, as the facts did not state a claim under the FCRA.  *Brockman I*, Doc. 37.

On March 12, 2015, Plaintiff, now represented by an attorney, filed the pending complaint asserting FCRA claims against Defendants Ocwen, Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union"), and claims for negligence, breach of contract and attorney's fees against Defendant BCHH.  [Doc. 1].  Defendants Ocwen and BCHH filed their respective motions to dismiss on April 8, 2015.  [Docs. 18, 20].  Plaintiff filed his responses on May 6, 2015.  [Docs. 28, 29].  Defendant BCHH filed a reply on May 18, 2015, [Doc. 30], and Defendant Ocwen filed

AO 72A
(Rev.8/8
2)

a reply on May 20, 2015, [Doc. 31].  With briefing complete, the Court evaluates the pending motions.

**B.    Facts**

In considering a motion to dismiss, the Court accepts the facts alleged in the complaint as true, and construes them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004).  Accordingly, the facts are as follows:

In 2004, Plaintiff obtained a loan to purchase a residential property. [Doc. 1 at ¶ 120].  In 2006, Plaintiff refinanced the property by obtaining two loans; the second loan was serviced by Defendant Ocwen ("Second Loan").  [*Id*. at ¶¶ 22, 27]. Plaintiff refinanced the property again in May 2011 and obtained a loan ("Third Loan") from First Ohio Banc & Lending, Inc. ("First Ohio").  [*Id*. at ¶ 28].  First Ohio selected Defendant BCHH to act as the settlement agent for the closing of the Third Loan, however, its services were paid for by Plaintiff.  [*Id*. at ¶¶ 30-31].  BCHH prepared a Settlement Statement which set a closing date of May 13, 2011 and a disbursement date of May 18, 2011.  [*Id*. at ¶ 32].  Prior to closing, BCHH obtained a payoff quote for the Second Loan from Ocwen in the amount of $53,582 which was effective until May 13,

3

2011, however, BCHH did not transfer the payoff to Ocwen until May 18, 2011. [*Id*. at ¶¶ 33-34].

On June 27, 2011, Plaintiff received a message from a supervisor at Ocwen notifying Plaintiff that there was an issue with the payoff.  [*Id*. at ¶ 26].  Plaintiff then contacted BCHH about the issue and on July 8, 2011, Josie Brumbalow, a BCHH representative, emailed Plaintiff acknowledging that she had miscalculated the interest owed to Ocwen which resulted in the payoff being insufficient to satisfy the balance of the Second Loan.  [*Id*. at ¶ 38].  Plaintiff and Brumbalow continued to email each other about the issue and on July 13, 2011, Brumbalow again acknowledged that it was BCHH's mistake and, in return for Plaintiff's forbearance from instituting legal action, BCHH would "settle this issue at no costs or damage to [Plaintiff], [Plaintiff's family] or [Plaintiff's credit]."  [*Id*. at ¶ 39-40].

In July 2011, Ocwen began reporting negative credit information to consumer reporting agencies, including Defendants Experian and Trans Union, by reporting that Plaintiff was in default as a result of late payments.  [*Id*. at ¶ 44].  Plaintiff then filed disputes with the consumer reporting agencies, which reported the disputes to Ocwen. [*Id*. at ¶¶ 54-55].  In July and August 2011, BCHH representatives informed Plaintiff

4

of their efforts to fix the issues surrounding Plaintiff's credit issues with Ocwen. [*Id*. at ¶ 45].

On August 17, 2011, Ocwen notified BCHH that if BCHH submitted $339.45, the loan would be paid-in-full and the loan would be released; BCHH transferred the funds on August 18. [*Id*. at ¶¶ 47-48]. On August 20, 2011, Ocwen sent Plaintiff a letter stating that he was in default on the Second Loan in the amount of $3,177.80. [*Id*. at ¶ 49]. Plaintiff contacted BCHH, who confirmed that the remaining balance was sent to Ocwen and on September 1, 2011, BCHH notified Plaintiff that the situation was resolved and Ocwen would be taking steps to remove any negative entries in Plaintiff's credit. [*Id*. at ¶ 51]. In December 2011, Plaintiff received from Ocwen a copy of an IRS Form 1099-C for Cancellation of Debt indicating that Ocwen cancelled Plaintiff's debt in the amount of $1,701.60. [*Id*. at ¶ 52].

In July 2012, Plaintiff attempted to refinance the property and was told that his credit rating was too low to qualify. [*Id*. at ¶ 56]. Plaintiff then discovered that his credit rating suffered by Ocwen's reporting that his account was 30, 60, and 90 days late and the account was settled for less than the amount owed. [*Id*. at *¶* 57]. In July 2012, Plaintiff again filed disputes with the consumer reporting agencies, which reported the disputes to Ocwen. [*Id*. at ¶¶ 59-60]. On September 7, 2012, Ocwen sent

5

Plaintiff a letter representing that Ocwen submitted a credit update to the consumer reporting agencies instructing them to delete "any negative credit reported on the loan." [*Id*. at ¶ 62].  On October 19, 2012, Equifax informed Plaintiff that it would be removing all negative credit information supplied by Defendant Ocwen.  [*Id*. at ¶ 63].

On October 31, 2012, in an attempt to refinance the property, Plaintiff was informed that he was not eligible for a refinancing program due to the negative credit information reported by Ocwen.  [*Id*. at ¶ 65].  Plaintiff then sent a letter to Ocwen on November 2, 2012, informing Ocwen that it continued to report incorrect, negative information with regard to Plaintiff's account.  [*Id*. at ¶ 66].  On November 26, 2012 and February 15, 2013, Ocwen sent Plaintiff correspondence indicating that, as of August 18, 2012, Ocwen continued to report Plaintiff's account as "[p]aid in full for less than the full balance."  [*Id*. at ¶¶ 67-68].

In April 2013, Plaintiff attempted to refinance the loan and was denied due to negative credit information reported by credit reporting agencies.  [*Id*. at ¶ 69].  In July 2013, Equifax and Trans Union stopped reporting negative credit information; however, as of November 2014, Defendant Experian continued to report negative information provided by Ocwen.  [*Id*. at ¶¶ 70-71].

6

## II.    Legal Standard

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that all allegations in the complaint are to be taken to be true even if doubtful in fact). However, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).  Additionally, the Court is not required to accept Plaintiff's legal conclusions. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012) (citing *Iqbal*, 556 U.S. at 678).  Nor will the Court "accept as true a legal conclusion couched as a factual allegation." *See Twombly*, 550 U.S. at 555.

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading states a claim when it contains,

AO 72A
(Rev.8/8
2)

*inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Twombly*, 550 U.S. 544 (2007), described as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

8

*Iqbal*, 556 U.S. at 678-79 (alterations, citations, and internal quotation marks omitted).

## III.   Discussion

Plaintiff's complaint asserts claims under the FCRA against Defendant Ocwen (Counts I and II) and Defendants Trans Union and Experian (Counts III and IV). Plaintiff also asserts state law claims of negligence (Count V) and breach of contract (Count VI) against Defendant BCHH, as well as for attorney's fees (Count VII). [Doc. 1, *passim*].  Defendant Ocwen seeks to dismiss the complaint on the grounds that Plaintiff's claims against it are barred by *res judicata* and the applicable statute of limitations, and that the complaint fails to state a claim under the FCRA.  [Doc. 18-1, *passim*].  Defendant BCHH seeks to dismiss the complaint on the grounds that Plaintiff's negligence claim is barred by the statute of limitations and Plaintiff has not alleged facts to show that BCHH owed a duty to Plaintiff, Plaintiff's breach of contract claim fails to show that there was a valid contract, and Georgia does not recognize an independent cause of action for expenses of litigation.  [Doc. 21-1, *passim*].[1]

---

[1]     Defendants Trans Union and Experian did not move to dismiss the complaint.  [*See* Dkt.].

9

**A.      Defendant Ocwen's Motion to Dismiss, [Doc. 18]**

**1.      *Res Judicata***

**a.      Arguments of the parties**

Ocwen argues that Plaintiff previously attempted to assert FCRA claims against it in *Brockman I*, when Plaintiff moved in that action to file an amended complaint. [Doc. 18-1 at 10].  Ocwen submits that when the District Court denied Plaintiff's motion to amend, it concluded that the claims were untimely and in any event were futile.  [*Id*. at 11-12 (citing *Brockman I*, Doc. 37 at 11)].  Ocwen thus argues that *res judicata* bars assertion of Plaintiff's FCRA claims in this action because all of the requirements of *res judicata* have been met: (1) the prior order operated as a final adjudication on the merits of Plaintiff's FCRA claims against Ocwen, (citing *McMillan v. Fulton Cnty*, 352 Fed. Appx. 329, 331 (11th Cir. Nov. 5, 2009); *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 400 (2d Cir. 1997)); (2) the prior order was entered by a competent court of jurisdiction; (3) Ocwen was named as a party in *Brockman I* and thus Plaintiff had a full opportunity to litigate any claims against it; and (4) the operative facts of the previous and current lawsuits are identical and thus the current action arises out of the same nucleus of operative fact as *Brockman I*.  [Doc. 18-1 at 12-13].

10

Plaintiff responds that his claims are not barred by *res judicata* because his earlier-filed claims were dismissed without prejudice and thus there was no final adjudication on the merits. [Doc. 29 at 8]. Plaintiff argues that the cases cited by Ocwen are distinguishable, namely that, in *McMillan*, the underlying claims were adjudicated on the merits at summary judgment and here, the underlying claims were dismissed without prejudice. [*Id*. at 9]. Plaintiff also argues that other courts have held that the denial of a motion to amend is not an adjudication on the merits where none of the litigant's claims were adjudicated on the merits. [*Id*. (citing *Long v. TRW Vehicle Safety Sys., Inc.*, No. CV-09-2209-PHX-DGC, 2010 WL 729465 (D. Ariz. Feb. 26, 2010))]. Finally, Plaintiff argues that if *res judicata* applies, there are factors that mitigate against a strict application: (1) Plaintiff was proceeding *pro se* in the previous litigation, (citing *Flaherty v. Lang*, 199 F.3d 607 (2d Cir. 1999)), and (2) the District Judge held that if Plaintiff was able to provide the jurisdictional information about Ocwen, then Plaintiff may seek to file a new complaint. [*Id*. at 10 (citing *Brockman I*, Doc. 20 at 5 n.1)].

Although Ocwen filed a reply brief, it did not address the issue of *res judicata*. [*See* Doc. 31].

11

### b.   Discussion

*Res judicata* "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citation omitted).  In determining whether Plaintiff's new lawsuit is barred by *res judicata*, the Court applies federal law, because " 'federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction.' " *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004) (quoting *CSX Transp., Inc. v. Brotherhood of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003)).  *Res judicata* applies if "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale*, 193 F.3d at 1238 (citation omitted).  Two cases will be considered the same "claim" or "cause of action" for purposes of *res judicata* "if a case arises out of the same nucleus of operative fact or is based upon the same factual predicate as [the] former action." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990) (internal quotations omitted) (citation omitted).

Plaintiff does not deny that the decision in question was rendered by a court of competent jurisdiction, that the parties involved are identical, or that the case arises out of the same nucleus of operative fact. [*See* Doc. 29 at 7-10]. Rather, Plaintiff argues that there was no final judgment on the merits. [*Id.* at 7-9]. While the Court agrees that there was no final judgment on the merits as to Plaintiff's state law claims, the Court concludes that there was a final judgment entered on the merits of Plaintiff's FCRA claims against Ocwen. After the District Judge dismissed Plaintiff's state law claims for lack of subject matter jurisdiction, *Brockman I*, Doc. 20, Plaintiff filed a motion for reconsideration, *Brockman I*, Doc. 26, as well as a motion for leave to file an amended complaint attempting to assert subject matter jurisdiction by way of federal question by asserting a FCRA claim against Ocwen. *Brockman I*, Doc. 27. The District Judge denied Plaintiff's motion for leave to amend on futility grounds, specifically finding that the proposed amended complaint failed to state a claim against Ocwen under the FCRA. *See Brockman I*, Doc. 37 at 11, 13.

Plaintiff argues that because his other claims were dismissed without prejudice, it necessarily follows that his proposed FCRA claim was also dismissed without prejudice. The Court disagrees.

13

> A court's determination that a proposed amendment to a complaint would be futile operates as a judgment on the merits *of the proposed claim*. This conclusion follows from the fact that [when] a . . . court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail. . . . In other words, denial on grounds of futility is essentially a holding that the proposed amended complaint fails to state a claim upon which relief can be granted, and the Supreme Court has clearly stated that [t]he dismissal for failure to state a claim . . . is a judgment on the merits.

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014) (emphasis added) (internal quotations and citations omitted).[2]

While the Order denying the motion for reconsideration and motion for leave to amend did not specifically state that Plaintiff's FCRA claim was dismissed with prejudice, the District Judge's denial of leave to add the claim on futility grounds demonstrates an intent by the District Judge to deny the claim with prejudice. *See Brockman I*, Doc. 37 at 11-12 (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their

---

[2]      Plaintiff asserts that at least one court has found that where none of the underlying claims were adjudicated on the merits, a denial of a motion to amend is not an adjudication on the merits. [Doc. 29 at 9 (citing *Long*, 2010 WL 729465)]. First, the unpublished case from the District of Arizona is not binding on this Court. *See, e.g., McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (recognizing that "a district judge's decision neither binds another district judge nor binds him"). Second, *Long* is readily distinguishable, since in that case leave to amend was denied solely on the grounds that it was untimely and, thus, did not address whether the proposed amended complaint stated a claim. *Long*, 2010 WL 729465, at * 1, 4-5.

14

time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.")).  As the Eleventh Circuit reiterated in an unpublished case, "even if some ambiguity existed in the court's order as to whether the dismissal was with or without prejudice, the Supreme Court has flatly stated that [t]he dismissal for failure to state a claim . . . is a judgment on the merits."   *Solis v. Global Acceptance Credit Co., L.P.*, 601 Fed. Appx. 767, 770 (11th Cir. Jan. 28, 2015).  Moreover, Plaintiff has not asserted any new facts or legal theories pertaining to his FCRA claim, which the District Judge declared fails to state a claim.  [*See* Doc. 1]; *Brockman I*, Doc. 37 at 13.  For this reason, deference should not be given to Plaintiff's *pro se* status in *Brockman I*. [*See* Doc. 29 at 10].

Accordingly, the Court finds that Plaintiff's FCRA claim against Ocwen is barred *by res judicata*.  Therefore, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant Ocwen's motion to dismiss and that the FCRA claims against Ocwen (Counts I and II) be **DISMISSED WITH PREJUDICE** as barred by *res judicata*.

15

### 2.       FCRA - Alternative Recommendation

In the event the District Judge does not agree with this recommendation, the undersigned offers the alternative recommendation:

### a.       Arguments of the Parties

Ocwen also argues that Plaintiff's FCRA claims are barred by the statute of limitations.  [Doc. 18-1 at 13].  Ocwen argues that the complaint alleges that Plaintiff became aware of the credit reporting issues in or around July 2011 and filed disputes with the credit reporting agencies.  [*Id*. (citing [Doc. 1 at ¶¶ 44-45, 54])].  Thus, Ocwen argues, Plaintiff must have filed his FCRA claim by July 2013, two years after he discovered the alleged errors.  [*Id*.].  Ocwen also argues that the filing of the previous action does not toll the statute of limitations.  [*Id*. at 14].  Even if it were assumed Plaintiff's FCRA claim was tolled during the entire pendency of *Brockman I*, Ocwen argues that the action was still not filed within the two year statute of limitations as Plaintiff had to file the new action on or before October 15, 2014.  [*Id.*].

In his response, Plaintiff argues that he filed his claims within the two-year statute of limitations because Ocwen fails to acknowledge its continuing violations of the FCRA.  [Doc. 29 at 10-11].  Plaintiff argues that Ocwen continued to report false information as late as April 2013 and as the Complaint was filed on March 12, 2015,

16

the Complaint was filed within the statute of limitations.  [*Id*. at 11].  Plaintiff did not argue that tolling applied to his FCRA claim against Ocwen.  [*See id.* at 10-11].

In its reply, Ocwen argues that Plaintiff's argument is centered around Ocwen reporting that the loan was "paid in full for less than the full balance" and Plaintiff had knowledge of this reporting in July 2012, October 2012 and February 2013.  [Doc. 31 at 5 (citing [Doc. 1 at ¶¶ 57, 65-68])].  Ocwen argues, however, that Plaintiff did not allege that he submitted a new dispute to any of the credit reporting agencies regarding this reporting and he never alleges that Ocwen was informed of this dispute.  [*Id*.].  Ocwen argues that Plaintiff has no FCRA claim for the alleged April 2013 reporting and cites to case law that provides that an action arises only when the reporting entity fails to reinvestigate properly, citing *Lamb v. Verizon Wireless Servs.*, LLC, 284 Ga. App. 696, 697-98, 644 S.E. 2d 412, 413 (2007), and that a furnisher's duty under the FCRA is triggered when the furnisher received notice of a dispute from a consumer reporting agency, citing *Young v. Equifax Credit Information Svcs.*, 294 F.3d 631, 639-40 (5th Cir. 2002).  [Doc. 31 at 5].  Ocwen argues that even if Plaintiff could assert a FCRA claim based on the reporting alone, then Plaintiff had knowledge of the reporting as late as February 15, 2013, and thus the complaint had to be filed on or before February 15, 2015.  [*Id*. at 6].

17

**b.     Discussion**

The FCRA, 15 U.S.C. § 1681 *et seq.*, was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."   *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).   It provides that a plaintiff must bring an action "not later than the earlier of: 1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or 2) 5 years after the date on which the violation that is the basis for such liability occurs."   15 U.S.C. § 1681p.

Although it was not clearly asserted until the reply brief, Ocwen is correct that Plaintiff's FCRA claims did not arise until after Ocwen received notice of a dispute from a consumer reporting agency and failed to properly investigate the claim.   While the parties appear to rightfully agree that the two-year statute of limitation applies, § 1681p states that the two years does not begin to run until the plaintiff's discovery of *"the violation that is the basis for such liability*."   15 U.S.C. § 1681p(1) (emphasis added).

The Court observes that the complaint does not allege the applicable provision of the FCRA that was violated, but the parties agree that Plaintiff may only assert a

AO 72A
(Rev.8/8
2)

claim against Ocwen under 15 U.S.C. § 1681s-2(b).[3]   [*See* Doc. 18-1 at 15-17;

Doc. 29 at 12].  Section 1681s-2(b) imposes duties upon the furnishers of information,

but these duties do not arise until after the furnisher receives notice of the dispute from

the credit reporting agency.   15 U.S.C. § 1681s-2(b)(1); *Anderson v. EMC Mortg.*

*Corp.*, 631 F.3d 905, 907 (8th Cir. 2011) (holding that the duties of a furnisher of credit

information under § 1681s-2(b) are triggered by notice that its information is being

disputed from a credit reporting agency, not from the consumer); *see also Peart v.*

*Shippie*, 345 Fed. Appx. 384, 386 (11th Cir. Aug. 11, 2009) (holding that § 1681s-2(b)

"can be enforced through a private right of action, but only if the furnisher received

notice of the consumer's dispute from a consumer reporting agency"); *Green v. RBS*

*Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th  Cir. Aug. 4, 2008) (same).  Once the

furnisher has received notice of the dispute, the furnisher is then under a duty to

investigate the dispute, report the results of the investigation to the credit reporting

---

[3]        In a footnote, Plaintiff states that he does not oppose Defendant Ocwen's
motion to dismiss with respect to Plaintiff's claim that Ocwen violated
15 U.S.C. § 1681s-2(a). [Doc. 29 at 13 n.1].  Plaintiff additionally requests that he be
granted leave to amend the Complaint by withdrawing his allegations concerning
violations of 15 U.S.C. § 1681s-2(a).  [*Id.*].  The undersigned **RECOMMENDS** that
the District Judge **GRANT** Defendant Ocwen's motion to dismiss to the extent that
Plaintiff attempted to assert a claim under 15 U.S.C. § 1681s-2(a), and thus  Plaintiff's
request for leave to amend should be **DENIED AS MOOT**.

AO 72A
(Rev.8/8
2)

agency, and, if the information is found to be inaccurate, incomplete, or cannot be verified, then the furnisher must modify the item of information, delete the item of information or permanently block the reporting of that item of information. 15 U.S.C. § 1681s-2(b)(1)(A), (C), (E). Section 1681s-2(b) also imposes a deadline of thirty days to comply with the section from the time of the consumer's dispute. 15 U.S.C. § 1681s-2(b)(2). Therefore, a cause of action under § 1681s-2(b) occurs no earlier than thirty days from a plaintiff's dispute to the credit bureaus. *See id.*; *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1255 (S.D. Fla. 2009) (holding that bank had thirty days to begin its investigation before being in breach); *Sweitzer v. Am. Express Centurion Bank*, 554 F. Supp. 2d 788, 795 (S.D. Ohio 2008). However, the violation is triggered when the furnisher receives notice of the dispute. 15 U.S.C. § 1681s-2(b); *Deaton v. Chevy Chase Bank*, 157 Fed. Appx. 23, 24 (9th Cir. Nov. 28, 2005); *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014). Further, an action cannot be maintained unless the plaintiff alleges that the defendant received notice of the dispute. 15 U.S.C. § 1681s-2(b); *Pinckney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1319 (N.D. Ga. 2005) (Hunt, J.); *Horton v. HSBC Bank*, Civil Action File No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *6-7 (N.D. Ga. June 5, 2013) (Walker, M.J., *adopted by* Thrash, J.); *see also Salvatore v. Nationstar Mortgage,*

*LLC*, No. 8:15-CV-1390-T-24AEP, 2015 WL 5970707, at *3 (M.D. Fla. Oct. 13, 2015) ("Because Plaintiff fails to allege that Defendant received notice of a dispute from a consumer reporting agency, as required by § 1681s-2(b), his claim fails as a matter of law.").

In the complaint, Plaintiff alleges that he disputed the reported information with credit reporting agencies on two occasions and Defendant received notice of these disputes. Plaintiff first filed disputes with the credit reporting agencies "sometime in July 2011," which notice was received by Ocwen ("First Dispute"). [Doc. 1 at ¶¶ 54-55]. The second dispute was filed with the credit reporting agencies in July 2012 after discovering that Ocwen reported his account as "30, 60, and 90 days late and was settled for less than the amount owed" and Ocwen received notice of the dispute. [*Id*. at ¶¶ 57, 59-60]. Plaintiff does not allege that he filed disputes with the credit reporting agencies later than July 2012. [*See id.*, *passim*]. Thus, these separate disputes triggered separate limitations periods. *Marcinski*, 36 F. Supp. 3d at 290-91; *Maiteki v. Marten Transp. Ltd.*, 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013); *Young v. LVNV Funding LLC*, No. 12 CV 1180, 2013 WL 4551722, at *3 (E.D. Mo. Aug. 28, 2013); *Larson v. Ford Credit*, No. 06-cv-1811, 2007 WL 1875989, at *4 (D. Minn. June 28,

21

2007).[4]   Accordingly, accounting for the 30-day response period by Ocwen, 15 U.S.C. § 1681s-2(b)(2), the latest Plaintiff could have filed an action regarding the first dispute would have been August 2013 and the latest Plaintiff could have filed an action regarding the second dispute was August 2014.  The complaint in this action was not filed until March 2015.  [*See* Doc. 1].  Plaintiff did not argue that he was entitled to any sort of tolling and the Court finds that no tolling applies here.  Therefore, if the District Judge does not adopt the above recommendation on *res judicata*, the

---

[4]     The Court is aware that there is a split of authority on this issue as some courts have found that subsequent complaints regarding the same dispute do not trigger a new limitations period.  *See Hatten v. Experian Info. Sol., Inc.*, No. 12-12236, 2013 WL 5179190, at *4 (E.D. Mich. Sept. 12, 2013); *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich., May 30, 2008); *Blackwell v. Capital One Bank*, No. 606 CV 066, 2008 WL 793476, at *3 (S.D. Ga. Mar. 25, 2008); *Bittick v. Experian Inf. Sol., Inc.*, 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006). However, the Court is persuaded by the reasoning in *Marcinski* and *Maiteki* as they are most in line with the spirit and intent of the FCRA.  A furnisher's duties are triggered only when it receives notice of the dispute, *Deaton v. Chevy Chase Bank*, 157 Fed. Appx. 23, 24 (9th Cir. Nov. 28, 2005), and failure to comply within 30 days is a violation of the statute.  15 U.S.C. § 1681s-2(b)(2); *see also Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988) (reversing dismissal based on statute of limitations, holding that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies").  Also, the FCRA is remedial legislation, which is to be liberally construed in favor of consumers. *See Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (citing cases); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (noting that "[t]hese consumer oriented objectives support a liberal construction of the FCRA, and any interpretation of this remedial statute must reflect those objectives").  A broad reading of the statutory scheme suggests that each violation is potentially remedial.

AO 72A
(Rev.8/8
2)

undersigned **ALTERNATIVELY RECOMMENDS** to the District Judge that he

**GRANT** Defendant Ocwen's motion to dismiss and that the FCRA claims against

Ocwen (Counts I and II) be **DISMISSED**.[5]

---

[5]     In the event that the District Judge concludes that the statute of limitations does not bar Plaintiff's FCRA claims, the undersigned **ALTERNATIVELY RECOMMENDS** that Ocwen's motion to dismiss be granted as Plaintiff fails to state a claim upon which relief can be granted.  This recommendation flows from the *Brockman I* opinion. *See Brockman I*, Doc. 37 at 13.  The complaint, together with the attached documents, alleges that Defendant BCHH obtained a payoff quote from Ocwen valid through May 13, 2011; that Defendant BCHH transmitted the payoff on May 18, 2011, however, a representative at BCHH admitted that she miscalculated the interest owed to Ocwen "which resulted in the Payoff being insufficient to satisfy the balance of the Second Mortgage"; Ocwen sent Plaintiff a payoff quote for $1803.33 good through July 29, 2011; on August 18, 2011, BCHH transferred $339.45 to Ocwen after Ocwen informed BCHH that this amount would satisfy the loan; and Plaintiff received a 1099-C Cancellation of Debt from Ocwen stating that the amount of debt that was cancelled was $1701.60.  [Doc. 1 at ¶¶ 33-35, 38, 47-48, 52; Doc. 1-3; Doc. 1-8].  Given these facts, "Plaintiff has not shown that Ocwen reported, or failed to correct, false information regarding Plaintiff's credit history."  *See Brockman I*, Doc. 37 at 13.

Moreover, the amended complaint alleges that Plaintiff filed disputes in July 2011; that in September 2011,  BCHH reported to Plaintiff that Ocwen would be taking steps to remove any negative entries in Plaintiff's credit reports; and Plaintiff does not allege that Ocwen reported false statements between September 2011 and July 2012. [Doc. 1 at ¶¶ 51, 54-55].  Thus, the First Dispute was resolved and a claim for the First Dispute fails.

Finally, Plaintiff discovered in July 2012 that Ocwen reported that his account was 30, 60, and 90 days late and the account was settled for less than the amount owed; Plaintiff then filed disputes in July 2012; on September 7, 2012, Ocwen notified Plaintiff that it submitted a credit update to the credit reporting agencies; on

AO 72A
(Rev.8/8
2)

**B.      Defendant BCHH's Motion to Dismiss, [Doc. 20]**

**1.      Negligence Claim - Statute of Limitations**

**a.      Arguments of the Parties**

Defendant BCHH initially contends that Plaintiff's negligence claim is barred by Georgia's two-year statute of limitations. [Doc. 20-1 at 9 (citing O.C.G.A. § 9-3-33)]. BCHH argues that Plaintiff was aware of his alleged injury in July 2011, July 2012, and November 2012, more than two years before Plaintiff filed his complaint. [*Id.* at 10-11 (citing [Doc. 1 at ¶¶ 57-58; Doc. 1-2; Doc. 1-12])]. BCHH further argues that Plaintiff's previous action did not toll the statute of limitations. [*Id.* at 12-14]. First, BCHH argues that Plaintiff failed to file the action within the original applicable limitations period. [*Id.* at 13]. Second, BCHH argues that Plaintiff failed to file this action within six months after the Court dismissed the matter without prejudice for lack

_____

October 19, 2012, at least one credit reporting agency informed Plaintiff that it was removing all negative credit information supplied by Ocwen; and that on November 26, 2012, Ocwen sent Plaintiff a letter informing him that it reported that the account was "paid in full for less than the full balance." [Doc. 1 at ¶¶ 56-60, 62-63, 67]. Thus, the Second Dispute shows that Ocwen corrected information regarding Plaintiff's credit history and Plaintiff fails to show that Ocwen's reporting that the account was "paid in full for less than the full balance" was false. The complaint does not allege that Plaintiff filed any other disputes with the credit reporting agencies who then reported the dispute to Ocwen. Therefore, Plaintiff fails to state a claim against Ocwen.

24

of subject matter jurisdiction pursuant to Georgia's renewal statute, O.C.G.A. § 9-2-61. [Doc. 20-1 at 12, 13].   BCHH argues that the Court dismissed *Brockman I* on October 9, 2013, citing *Brockman I*, Doc. 20, and the complaint in this action was filed April 12, 2015, more than six months after the dismissal.  [Doc. 20 at 13].   Thus, BCHH argues, Plaintiff filed the complaint outside of the time period allowed by the renewal statute.  [*Id.*].   BCHH recognizes that the Court issued a second order on September 17, 2014, *Brockman I*, [Doc. 37], but insists that the second order denying the motion for reconsideration does not serve as the start of the six month period under the renewal statute because Plaintiff pursued a discretionary remedy after the matter was dismissed.  [Doc. 20 at 13-14 (citing *Owens v. Hewell*, 222 Ga. App. 563, 564-65, [474 S.E.2d 740, 741-42] (1996))].

In his response, Plaintiff urges this Court to use the final order issued in *Brockman I* on September 17, 2014 as the starting date of the six-month renewal period. [Doc. 28 at 8].  Plaintiff argues that the plain language of the renewal statute refers to either the "dismissal or *discontinuation*, whichever is later."  [*Id.* (citing O.C.G.A. § 9-2-61) (emphasis in brief)].   Plaintiff argues that, although the initial dismissal was entered on October 9, 2013, the final discontinuation of the lawsuit occurred on September 17, 2014.  [*Id.*].  Plaintiff argues that *Owens* is favorable to him because,

25

like the plaintiff in *Owens*, Plaintiff had a statutory right to file a motion for reconsideration pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. [*Id.* (citing *Owens*)]. Plaintiff argues that the final order denying the appeal in the Eleventh Circuit is analogous to the final order denying Plaintiff's motion for reconsideration. [*Id.* at 9].

In reply, BCHH argues that *Owens* held that the plaintiff had a statutory right to appeal to the Eleventh Circuit, but not to the Supreme Court, so the *Owens* plaintiff's petition for writ of certiorari did not stay the dismissal and did not prevent the judgment from becoming final. [Doc. 30 at 8 (citing *Owens*, 222 Ga. App. at 564, 474 S.E.2d at 742)]. BCHH argues that, here, the District Court treated Plaintiff's motion for reconsideration as a motion under Rule 60(b), *Brockman I*, [Doc. 37 at 8], which "does not affect the judgment's finality or suspend its operation." [Doc. 30 at 9 (citing Fed. R. Civ. P. 60(c))]. BCHH argues that Plaintiff's interpretation of the renewal statute would functionally nullify the six-month period under the renewal statute, since a motion under Rule 60(b) can be filed up to a year after the judgment or within any "reasonable" time period. [*Id.* (citing Fed. R. Civ. P. 60(c)(1))]. BCHH argues that under Plaintiff's reasoning, the six-month renewal period can be extended so long as Plaintiff has an opportunity to file a motion for reconsideration. [*Id.* at 10].

26

BCHH maintains that such a result is inconsistent with the renewal statute's clear purpose of placing a six-month limitation on renewed actions.  [*Id.*].  Further, BCHH argues that *Brockman I* did not end in a "discontinuance" as that term is used under Georgia law: "a 'discontinuance' refers to a situation where a plaintiff fails to prosecute or otherwise terminates an action."  [*Id.* (citing O.C.G.A. § 9-2-61(a); *Gresham v. Harris*, 329 Ga. App. 465, 467-68, 765 S.E.2d 400, 403 (2014))].  BCHH argues that Plaintiff did not terminate the previous action; instead it was dismissed by the District Court without prejudice over Plaintiff's objection.  [*Id.*].

### b.    Discussion

Plaintiff does not disagree that there is a two-year statute of limitations for his negligence claim or that the claim began to accrue in July 2011.  [*See* Doc. 28 at 7-10].  Rather, Plaintiff argues that his claim was tolled by the Georgia renewal statute.  [*See id.*].  While BCHH acknowledges that Georgia's renewal statute is applicable, the parties differ on when the renewal period began: October 9, 2013 or September 17, 2014.  The parties also appear to acknowledge that if the renewal period began on the former date, then Plaintiff's negligence claim is barred; however, if it began to run on the latter date, then Plaintiff's claim is viable.  [*See* Doc. 20-1 at 13-14; Doc. 28 at 7-10].

Georgia's renewal statute provides:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the Plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, which ever is later . . . .

O.C.G.A. § 9-2-61(a). This statute applies to matters that are discontinued or dismissed without prejudice for lack of subject matter jurisdiction. O.C.G.A. § 9-2-61(b).

The Court concludes that BCHH has the better argument. Plaintiff appears to acknowledge that his suit was "dismissed" under the statute on October 9, 2013, however Plaintiff argues that the suit was not "discontinued" until September 17, 2014. [*See* Doc. 28 at 8]. As BCHH points out, the Court of Appeals of Georgia recently discussed the definition of "discontinuance" and found it to mean that a plaintiff either voluntarily dismisses the action without prejudice or it is dismissed for want of prosecution. *Gresham*, 329 Ga. App. at 468, 765 S.E.2d at 403. Here, neither of these two scenarios occurred and, thus, the action cannot have said to be "discontinued" at any point in *Brockman I*.

To the extent that Plaintiff argues that the matter was not actually dismissed until September 17, 2014, the Court is also not persuaded. As noted by BCHH, the District

28

Judge in *Brockman I* treated Plaintiff's motion for reconsideration as a Rule 60(b) motion. *Brockman I*, Doc. 37 at 8. A motion filed pursuant to Rule 60(b) may be filed within one year or within a "reasonable time" as applicable. Fed. R. Civ. P. 60(c)(1). "The motion does not affect the judgment's finality or suspend its operation," Fed. R. Civ. P. 60(c)(2), and thus, the initial dismissal is controlling. To allow a plaintiff a "reasonable time" to file a motion for reconsideration under Rule 60(b) goes against the spirit of the statute to limit the renewal period to six months after the judgment. Moreover, final judgment was entered on October 9, 2013, *Brockman I*, Doc. 21, and no other judgments were entered in the matter after the District Judge's ruling on the motion for reconsideration. *See* Dkt., *Brockman I*.

The *Owens* case is also not in Plaintiff's favor. In *Owens*, the court found that the plaintiff had a statutory right to appeal to the Eleventh Circuit, but did not have a statutory right, only a discretionary right, to appeal to the United States Supreme Court. *Owens*, 222 Ga. App. at 564; 474 S.E.2d at 742 (citing 28 U.S.C. § 1291; 28 U.S.C. § 1254(1); *Potts v. Flax*, 313 F.2d 284, 290, n.6 (5th Cir. 1963)). Thus, the court determined that the renewal statute began to run from the time of affirmance by the Eleventh Circuit, not the time of the denial of plaintiff's petition for writ of certiorari. *Id.* In this case, Plaintiff analogizes his motion for reconsideration to an

AO 72A
(Rev.8/8
2)

appeal to the Eleventh Circuit, arguing that he had a "statutory right" to file a motion for reconsideration. [Doc. 28 at 8-9]. However, Plaintiff points to no statute that gives him that right, instead citing only to the Federal Rules of Civil Procedure. [*Id*. at 8 (citing Fed. R. Civ. P. 54(b))].[6]  Moreover, as noted above, a Rule 60(b) motion for reconsideration does not have any effect on the finality of the judgment prior to ruling, just as the petition for a writ.  Fed. R. Civ. P. 60(c) ("The motion does not affect the judgment's finality or suspend its operation."); *Owens*, 222 Ga. App. at 564, 474 S.E.2d at 742 (" 'We find no support for the contention that the filing of a petition for a writ of certiorari prevents the judgment . . . from becoming final until the [United States] Supreme Court acts upon the petition, where no stay or mandate has been filed

---

[6]      Rule 54(b) provides:

When an action presents more than one claim for relief – whether as a claim, counter-claim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

30

AO 72A
(Rev.8/8
2)

. . . .' ") (quoting *Glick v. Ballentine Produce*, 397 F.2d 590, 594 (8th Cir. 1968)). Because dismissal and judgment were entered on October 9, 2013 and no stay of the judgment was in effect, Plaintiff was required to refile his negligence claim no later than April 9, 2014. The claim was not refiled until March 12, 2015. [Doc. 1]. Therefore, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant BCHH's motion to dismiss Plaintiff's negligence claim (Count V).

### 2.   Negligence - Merits

In the event the District Judge does not agree with this recommendation, the undersigned offers the alternative recommendation:

### a.   Arguments of the Parties

BCHH argues that Plaintiff's negligence claim should be dismissed because Plaintiff has not shown that BCHH owed a duty to Plaintiff. [Doc. 20-1 at 14]. BCHH argues that it only owed a duty to First Ohio, the lender who selected BCHH as the settlement agent. [*Id.* at 15]. BCHH asserts that if a duty was owed to Plaintiff, it fulfilled that duty when it remitted the payoff amount to Defendant Ocwen. [*Id.*].

Plaintiff argues that BCHH owed both contractual duties to Plaintiff and a duty to Plaintiff to protect against foreseeable and unreasonable risk of harm. [Doc. 28 at 10-11]. Plaintiff argues that it was foreseeable that by negligently failing

AO 72A
(Rev.8/8
2)

to provide the proper payoff amount at closing, BCHH would harm Plaintiff. [*Id.* at 11]. Plaintiff argues that BCHH owed Plaintiff an additional duty pursuant to O.C.G.A. § 51-1-19.[7] [*Id.*]. Plaintiff argues that, in return for the trust that BCHH would properly consummate the settlement of the loan, Plaintiff paid BCHH for settlement services out of the loan proceeds it received from First Ohio. [*Id.* (citing [Doc. 1 at ¶ 31])]. Plaintiff argues that BCHH breached this duty when it negligently miscalculated the necessary payoff and, as a result, failed to deliver sufficient payment to Ocwen. [*Id.* (citing *Benson v. McMillan*, 261 Ga. App. 78, 81, 581 S.E.2d 707, 710 (2003))]. Plaintiff further argues that, as a result of the insufficient payoff, negative credit information was placed on Plaintiff's credit report with credit reporting agencies and Plaintiff suffered damages in the form of inability to obtain credit and denials of multiple attempts to refinance his home at a favorable interest rate. [*Id.*].

In its reply, BCHH argues that Plaintiff relies on O.C.G.A. § 51-1-19 to establish a *quid pro quo* relationship between Plaintiff and BCHH that did not exist. [Doc. 30 at 4]. BCHH reasserts that it owes no duty to Plaintiff because First Ohio selected it

---

[7]         O.C.G.A. § 51-1-19 provides:

When trust or confidence is reposed in a person in consideration of the payment or promise of a reward to him, negligence in the person trusted which results in injury to the other person shall give the injured party a right of action.

as the settlement agent for the refinance transaction, which Plaintiff admits.  [*Id*. at 4-5 (citing [Doc. 1 at ¶¶ 7, 48])].  BCHH also reasserts that if a duty was owed, then the duty was satisfied when it remitted the payoff amount in full to Ocwen.  [*Id*. at 5].  Finally, BCHH argues that Plaintiff failed to set forth facts to establish a fiduciary duty between himself and BCHH.  [*Id*.].

### b.    Discussion

In Georgia, the elements of a negligence claim are: "(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a causal connection between the conduct and the injury; and (4) damages from the breach of duty." *Lowry v. Cochran*, 305 Ga. App. 240, 246, 699 S.E.2d 325, 331 (2010) (alteration omitted) (quoting *Underwood v. Select Tire*, 296 Ga. App. 805, 808-09, 676 S.E.2d 262, 267 (2009)).  Although BCHH cites to authority that a duty must be owed to assert a negligence claim, BCHH offers no real reason or authority as to why it did not owe a duty to Plaintiff to properly calculate the amount of the payoff and submit the correct funds in a timely manner to Ocwen, or that the complaint fails to assert that such a duty was owed.  To the contrary, the complaint alleges that a duty of reasonable care arose when Plaintiff paid BCHH for its services.  [Doc. 1 at ¶¶ 105-106].  BCHH does not

address the fact that Plaintiff compensated BCHH, and does not argue, much less cite to authority to show, why this allegation does not suffice to show that BCHH owed Plaintiff a duty of reasonable care.[8]

Thus, the Court concludes that the complaint sufficiently alleges a negligence claim against BCHH by alleging a duty owed to Plaintiff by way of payment for services and that BCHH breached that duty by submitting the payoff late to Ocwen and miscalculating the interest, resulting in harm and damages to Plaintiff. [Doc. 1 at ¶¶ 104-11]. BCHH asks the Court to find that it satisfied the duty to Plaintiff by paying Ocwen in full, [Doc. 20-1 at 15; Doc. 30 at 5], however, this was not done prior to the allegedly negligent acts in question, i.e. submitting the untimely payment

---

[8] The Court recognizes that Plaintiff's response attempts to show a statutory duty owed pursuant to O.C.G.A. § 51-1-19; however, this statutory duty was not alleged in the Complaint. BCHH makes no argument as to why this Court should not rely on this statute as a basis for BCHH's duty except to argue that Plaintiff attempts to use the statute to create a "*quid pro quo*" relationship that did not exist. [*See* Doc. 30 at 4-5]. The Court notes that, in its reply brief, BCHH makes a passing argument that Plaintiff attempted to introduce a new cause of action against BCHH without receiving leave of Court to amend the Complaint. [Doc. 30 at 3-4]. However, BCHH did not explain how Plaintiff attempts to set forth a new cause of action and did not name the new cause of action Plaintiff attempts to assert. [*See id.*].

34

and miscalculating the interest, and not before damage had been done to Plaintiff's credit.[9]

The Court also considered whether Plaintiff's negligence claim is independent of a contract as Plaintiff asserts a breach of contract claim. [*See* Doc. 1 at ¶¶ 112-115; Doc. 20-1 at 15]. The Court finds that it is.

O.C.G.A. § 51-1-11(a) provides that "if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract . . . ." This so-called "economic loss rule" "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Gen. Elec. Co. v. Lowe's Home Centers, Inc.*, 279 Ga. 77, 78, 608 S.E.2d 636, 637 (2005). "Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property[.]" *Id.* However, "where 'an independent duty exists under the law, the economic loss rule does not bar a tort

---

[9]    The Court notes that neither party addressed the possibility that Plaintiff's negligence claim may be preempted under the FCRA. *See* 15 U.S.C. § 1681t(b)(1)(F). If this claim survives the motion to dismiss, the Court expects the parties to fully brief this issue.

AO 72A
(Rev.8/8
2)

claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Hanover Ins. Co. v. Hermosa Const. Grp. LLC*, Civil Action No. 1:13-cv-2933-ODE, 2014 WL 5486602, at *5 (N.D. Ga. May 1, 2014) (Evans, J.) (quoting *Rosen v. Protective Life Ins. Co.*, No. 1:09-CV-3620, 2010 WL 2014657, at *9 (N.D. Ga. May 20, 2010) (Duffey, J.)).[10]

As will be explained below, the complaint alleges that Plaintiff and BCHH entered into a contract on July 13, 2011 where, in exchange for Plaintiff's forbearance from filing a suit (presumably on the negligence claim), BCHH agreed to correct the issues created by the insufficient payoff including, but not limited to, correcting the

---

[10]      Judge Evans explained that "[t]his principle has been applied in cases where the plaintiff *identified a statutory . . . duty* that would have existed absent the underlying contract." *Id.* (emphasis added).

Here, assuming a statutory duty has been asserted, Plaintiff has identified a duty for BCHH to perform under O.C.G.A. § 51-1-19, which exists absent an underlying contract. *See Waldrip v. Voyles*, 201 Ga. App. 592, 594, 411 S.E. 2d 765, 768 (1991) (since the creditor's obligation "arises from [a specific statute], not from a contract provision, it follows that this duty of the creditor is a duty imposed by law and not merely a duty imposed by the contract itself.") (internal quotations, citations, and punctuations omitted); *accord 4WD Parts Ctr., Inc. v. Mackendrick*, 260 Ga. App. 340, 343-44, 579 S.E.2d 772, 777 (2003) (finding that trial court did not err in awarding damages additional to that of breach of contract where plaintiff had identified a statutory duty); *Blackburn v. BAC Home Loans Serv., LP*, 914 F. Supp. 2d 1316, 1325 (M.D. Ga. 2012) (denying defendant's summary judgment motion as to plaintiff's trespass claim where, even though a contract existed, plaintiff identified an independent duty that arose from case law which was also codified by statute).

36

negative credit reports. [Doc. 1 at ¶ 113]. The complaint further alleges that BCHH owed Plaintiff a duty of reasonable care beginning around May 13, 2011, when BCHH was selected by First Ohio to be the settlement agent. [*Id*. at ¶¶ 28, 30, 105-106]. BCHH breached its duty by submitting the payoff loan late on May 18, 2011 and miscalculating the interest owed, resulting in damages which occurred in July 2011 when Ocwen began reporting negative information to the credit reporting agencies. [*Id*. at ¶¶ 44, 107-08]. All of this occurred prior to the alleged contract entered between BCHH and Plaintiff. Therefore, the Court finds that BCHH owed a duty of reasonable care to Plaintiff independent of its contractual duties.[11]

Therefore, if the District Judge does not agree with the undersigned's recommendation pertaining to the statute of limitations, the undersigned **ALTERNATIVELY RECOMMENDS** that BCHH's motion to dismiss Plaintiff's negligence claim for failure to state a claim be **DENIED**.

---

[11] To the extent that Plaintiff asserts a negligence claim for failure to correct the erroneous payoff since the contract was entered, [*see id.* at ¶ 109], the Court finds that this duty is a contractual one and is not independent of the contract. Thus, if the District Judge does not adopt the undersigned's recommendation pertaining to the statute of limitations, to the extent Plaintiff asserts a negligence claim for failure to correct the insufficient payoff after July 13, 2011, the undersigned **ALTERNATIVELY RECOMMENDS** that BCHH's motion to dismiss be **GRANTED**.

37

### 3.     Breach of Contract

#### a.     Arguments of the Parties

BCHH argues that Plaintiff has not pointed to a valid contract between BCHH and Plaintiff.  [Doc. 20-1 at 17].  BCHH insists that any contract that exists is between BCHH and First Ohio.  [*Id*.].  BCHH argues that the July 13, 2011 email from Brumbalow does not create a contract for indemnification as there was no offer, acceptance or consideration.  [*Id*. (citing O.C.G.A. § 13-3-1[12])].  According to BCHH, the email only demonstrates BCHH's continued willingness to assist Plaintiff in resolving the situation with Ocwen.  [*Id*.].  BCHH further argues that breach of contract claims are limited to pecuniary loss which Plaintiff has failed to allege.  [*Id*. at 18 (citing *Earth Scientists (Petro Servs.) Ltd. v. U.S. Fidelity & Guar. Co.*, 619 F. Supp. 1465, 1475 (D. Kan. 1985))].  Thus, BCHH argues that Plaintiff's breach of contract claim should be dismissed on this basis alone.  [*Id*.].  Moreover, BCHH argues that Georgia law does not permit punitive damages in actions for breach of

---

[12]     O.C.G.A. § 13-3-1 provides:

To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate.

38

contract. [*Id.* (citing *Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1164 (M.D. Ga. 2005))].

Plaintiff argues that the complaint alleges the existence of a contract, breach of the contract, and resulting damages. [Doc. 28 at 13]. Plaintiff argues that the complaint alleges that in July 2013, in a series of emails between Plaintiff and BCHH, the parties agreed that, in return for Plaintiff's forbearance from instituting legal proceedings, BCHH would fix all problems arising from the improper payoff. [*Id.* (citing [Doc. 1 at ¶¶ 38-40])]. Plaintiff argues that BCHH breached this agreement when it failed to correct all problems resulting from its miscalculation of the payoff, which resulted in the credit reporting agencies' continued report of negative credit information. [*Id.*]. Plaintiff argues that his damages are evidenced by the unsuccessful attempts to refinance his mortgage at a lower interest rate. [*Id.*].

In its reply, BCHH reasserts that there was no valid contract as there was no offer, acceptance, or consideration. [Doc. 30 at 11]. BCHH recognizes that a promise is good consideration for another promise if there is an absolute mutuality of engagement, (citing *Rushing v. Gold Kist*, 256 Ga. App. 115, 119, 567 S.E.2d 384, 388 (2002)); however, BCHH argues that, even if Brumbalow made a promise to Plaintiff, there was no mutuality of engagement. [*Id.*]. In reply to Plaintiff's allegation of

39

damages, BCHH argues that it is not a credit furnisher and has no relationship with the credit reporting agencies. [*Id.* at 12]. BCHH also reasserts that Plaintiff has failed to allege any actual or specific pecuniary loss and, thus, his breach of contract claim fails. [*Id.* (citing *TDS Healthcare Systems Corp. v. Human Hosp. Ill., Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995))].

### b.    Discussion

The Court is required to construe the facts in the complaint in favor of the plaintiff. *Butler*, 685 F.3d at 1265; *Spain*, 363 F.3d at 1187. Having done that, the Court concludes that Plaintiff has sufficiently alleged a valid contract with BCHH. The complaint alleges that Plaintiff and BCHH entered into a contract on July 13, 2011 where, in exchange for Plaintiff's forbearance from filing suit, BCHH agreed to correct the issues created by the insufficient payoff including, but not limited to, correcting the negative credit reports. [Doc. 1 at ¶¶ 39-40, 113]; [*see also* Doc. 1-2 at 1, 2].

However, the complaint does not allege a breach of the contract. The complaint alleges that BCHH agreed to fix any issues created by the insufficient payoff. [Doc. 1 at ¶ 40]. The complaint further alleges that in July and August 2011, BCHH kept Plaintiff updated on its efforts to fix the issues resulting from the insufficient payoff. [*Id.* at ¶ 45]. On August 18, 2011, BCHH sent to Ocwen $339.45 to satisfy the

40

insufficient payoff and release the mortgage.  [*Id*. at ¶ 47-48].  On September 1, 2011, BCHH sent an email to Plaintiff stating that the situation was resolved and that Ocwen would be taking steps to remove any negative entries in Plaintiff's credit reports. [*Id*. at ¶ 51].  In July 2012, Plaintiff discovered that his credit had suffered due to Ocwen reporting that his account was 30, 60, and 90 days late and the account was settled for less than the full amount which resulted in Plaintiff filing disputes with the credit reporting agencies.  [*Id*. at ¶¶ 57, 59].  On August 8, 2012, BCHH wrote a letter to Plaintiff stating that Ocwen represented that the August 18, 2011 payment of $339.45 would satisfy the balance and Ocwen would no longer report negative credit information.  [*Id*. at ¶ 61].  On September 7, 2012, Ocwen sent Plaintiff a letter stating that it had submitted a credit update to the consumer reporting agencies instructing them to delete any negative credit information reported on the loan.  [*Id*. at ¶ 62].  On October 19, 2012, Equifax notified Plaintiff that based on information supplied from his credit dispute, "namely the August 8, 2012 letter from Defendant BCHH and Defendant Ocwen," Equifax would be removing all negative credit information supplied by Ocwen.  [*Id*. at ¶ 63].  Based on this information, BCHH fulfilled its

41

contractual duties to "fix" the issues that arose from the insufficient payoff.  Thus, the Court does not find that BCHH breached the contract.[13]

Therefore, the undersigned **RECOMMENDS** that BCHH's motion to dismiss Plaintiff's breach of contract claim (Count VI) be **GRANTED**.

### 4.    Expenses of Litigation

In Count VII, Plaintiff seeks expenses of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11 against BCHH.  However, given that each of Plaintiff's claims against BCHH is due to be dismissed, Plaintiff's claim for attorney's fees is also due to be dismissed.  Accordingly, the undersigned **RECOMMENDS** that BCHH's motion to dismiss Plaintiff's expenses of litigation claim (Count VII) be **GRANTED**.[14]

---

[13]    The Court rejects BCHH's argument that Plaintiff's breach of contract claim fails because it does not allege any actual or specific pecuniary loss.  [*See* Doc. 20-1 at 18; Doc. 30 at 12].  BCHH cites a Kansas case in support of its argument which has no bearing on this Court or Georgia law, [Doc. 20-1 at 18 (citing *Earth Scientists*, 619 F. Supp. at 1465)], and a case from this District which does not support the argument, [Doc. 30 at 12 (citing *TDS Healthcare Sys.*, 880 F. Supp. at 1583)].

[14]    If the District Judge finds that one or both of Plaintiff's state law claims against BCHH survives, the undersigned **ALTERNATIVELY RECOMMENDS** that BCHH's motion to dismiss Plaintiff's claim for attorney's fees (Count VII) be **DENIED**.  Although this claim is dependent on the viability of Plaintiff's state law claims, *see Lamb v. Salvage Disposal Co.*, 244 Ga. App. 193, 196, 535 S.E.2d 258, 261 (2000), BCHH has not cited any cases that require this Court to dismiss the claim where there are viable state law claims and Plaintiff has properly asserted relief.  [*See* Doc. 20-1 at 18-19; Doc. 30 at 12-13]; O.C.G.A. § 13-6-11 (" . . . where the plaintiff has

AO 72A
(Rev.8/8
2)

IV.    **Conclusion**

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant Ocwen's motion to dismiss, [Doc. 18], and Defendant BCHH's motion to dismiss, [Doc. 20], be **GRANTED**.

**IT IS SO RECOMMENDED**, this 26th day of October, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

specially pleaded and has made prayer therefore and where the defendant acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."); *Goldsmith v. Peterson*, 307 Ga. App. 26, 29, 703 S.E.2d 694, 698 (2010).

43

AO 72A
(Rev.8/8
2)